## EDWARD B. MEARS *vs.* MAY C. P. JONES.

### Hancock.    Opinion June 5, 1907.

*Contracts.   Lease.   Construction.   Sale of property leased.   Commissions.*

The plaintiff, a real estate agent, was requested by the defendant to secure for her a tenant for one or more years for her estate.  He secured a tenant, under a written lease, " to hold for five seasons as follows, 1903, 1904, 1905, 1906 and 1907, June 1st to October 15th."   The lease provided that in the event of the property being sold  .   .   .   .   " this lease to be determined and ended at the end of the season immediately following the contract of sale."   The plaintiff executed the lease for the defendant as her agent. He was paid an annual commission of one hundred and fifty dollars for each of the years 1903 and 1904.   The premises were sold by the defendant during the season of 1904.   There was no express contract for commissions, either as to time or amount.

*Held:*  That the defendant is not liable to the plaintiff for commissions, as upon an implied contract, for the years 1905, 1906 and 1907.

It is immaterial, that though the lease gave the tenant an option of purchase, the sale was actually made to the tenant's wife.

On agreed statement.    Judgment for defendant.

Assumpsit on account annexed brought by the plaintiff for commissions for five years, alleged to be due him as agent or broker, for leasing property at Bar Harbor, September 6, 1902, then owned by the defendant.    The account annexed is as follows:

### " BAR HARBOR, MAINE.

" Mrs. May C. P. Jones,

                     To Edward B. Mears,                          Dr.
1902.

September 6th.   To commissions due on lease with A. S. Hewett, 5 per cent on $3,000 each year for five years,                                                $750

### CREDIT.

1903.

| September 30th, | By Cash | $150 | |
|---|---|---|---|
| 1904. | | | |
| September 30th, | By Cash | 150 | 300 |
| | Balance due | | $450." |

Writ dated December 9, 1904. Plea the general issue. The action came on for trial at the October term, 1905, of the Supreme Judicial Court, Hancock County. An agreed statement of facts was then filed and the case was reported to the Law Court without further proceedings at nisi prius.

The agreed statement is as follows :

" It is agreed for the purpose of this case only,

" (1) That the defendant, May C. P. Jones, on the sixth day of September, A. D. 1902, was the owner of an estate consisting of house, land and stable, known as " Reverie Cove," situated at the summer resort known as Bar Harbor, in the town of Eden, Hancock County, Maine, and the estate referred to in the lease hereinafter mentioned ;

" (2) That the plaintiff, Edward B. Mears, on said sixth day of September, A. D. 1902, was a real estate agent at said Bar Harbor, and having been previously requested by the defendant to secure a tenant for her for one or more years, then and there as such agent, secured for said defendant a tenant, Abram S. Hewett, for said " Reverie Cove," for the term noted in and subject to the provisions of the written lease, dated September 6, A. D. 1902, between said defendant and said Abram S. Hewett, duly executed, a copy of which is hereto attached, made a part of this agreed statement and may be used by either party.

" (3) That during the years 1903 and 1904, the rents falling due under said lease were fully paid ; that during the season of 1904, being one of the seasons included in said lease, the said " Reverie Cove " was sold and conveyed through another agent than the plaintiff (which other agent was not an agent or broker at the time of making the said lease, and did not have any authority at that time, to wit, September 6, A. D. 1902, to offer for sale the said " Reverie Cove," as he did not become an agent or broker in Bar Harbor until the year A. D. 1904) to Sarah A. Hewett, wife of the said Abram S. Hewett, and no further payments under the said lease were made to the said defendant or to the said plaintiff on the defendant's account."

"The question is whether or not the plaintiff is entitled to recover for the commission charged for the years 1905, 1906 and 1907, after the sale of the property.

"Upon the foregoing pleadings, this agreed statement, and the exhibit referred to, the Law Court is to determine whether or not the plaintiff is entitled to recover said commission. If the plaintiff is not entitled to recover, judgment is to be rendered for the defendant. If the plaintiff is entitled to recover, judgment may be rendered for the balance claimed under the declaration (with interest from date of the writ), no question being raised as to the reasonableness of the commission charged."

The lease referred to in the "agreed statement" is as follows:

"This indenture made the sixth day of September in the year of our Lord, one thousand nine hundred and two.

"Witnesseth that May C. P. Jones of the city of Washington, District of Columbia, does hereby lease, demise and let unto Abram S. Hewett of the borough of Manhattan, City, County and State of New York, her estate consisting of house, land and stable known as "Reverie Cove," situated on the shore of Frenchman's Bay, at the foot of Prospect Avenue, in the Village of Bar Harbor, Town of Eden, County of Hancock and State of Maine, together with the furniture therein and all privileges and appurtenances belonging to the said estate.

"To Hold for five seasons as follows, 1903, 1904, 1905, 1906, and 1907; June 1st to October 15th. Yielding and paying therefor the rent of Three thousand dollars ($3,000) dollars each year. And the said lessee does agree to pay the said rent in two equal payments each year as follows: Fifteen hundred ($1,500) dollars on July 1st; Fifteen hundred (1,500) dollars September 1st, each year. And to quit and deliver up the premises to the said lessor or her attorney peaceably and quietly at the end of the term aforesaid in as good order and condition (reasonable use and wearing thereof or inevitable accident, excepted) as the same now are or may be put into by the said lessor, and to pay the water, electric light and telephone taxes duly assessed thereon during the said periods, and not make or suffer any waste thereof. And the said lessor may enter to view and make

repairs and to expel the said lessee if he shall fail to pay the rent aforesaid, or if he shall make or suffer any waste or strip thereof, or shall fail to quit and surrender the premises to the said lessor at the end of each of the said terms in manner aforesaid, or should violate any of the covenants in this lease by said lessee to be performed.

"The said lessee agrees to keep the grounds in order during so much of each of the said terms as he shall occupy the property.

"The said lessor agrees to put and keep the said premises in good repair, suitable for the occupation of a family living in good style; to have the electric lights, gutters, range, laundry stove, furnace, steps to lawn, steps to beach, main entrance floor, blinds, screens and doors in good working order and to make the necessary repairs to stable floor and stalls, and to have the grounds and tennis court put in good order each season.

" The said lessor further agrees to have the house, stable and grounds cleaned and put in good order before the arrival of the tenant or sub-tenant, as the case may be.

" The said lessor hereby gives the right to sub-let the premises for any or all of the said annual terms above specified to a tenant approved of by her or her representative.

" It is agreed and understood by both the parties hereto that in the event of the property being sold, the tenant is to give up possession of the premises and this lease is to be determined and ended at the end of the season immediately following the contract of sale. And in the event of such sale the sum of One thousand, five hundred dollars, which the lessee proposes to expend for plumbing and other improvements, shall be returned to him or may be deducted from any payment of rent thereafter to be made.

"Before completing the sale however of the said property to any other party, the lessor agrees to offer it to the lessee at the same price and upon the same terms procurable from the intending purchaser, and the said lessee shall elect within ten days from receiving such notice whether he will purchase the said property upon the terms offered by said intending purchaser, and in case of election to purchase the said property the lessor agrees to make the proper conveyance in fee simple by usual warranty deed and the lessee agrees to make the payments in accordance with such terms of purchase.

"The obligation to sell and purchase thus provided for is to be regarded as an honorable agreement between the parties hereto, but shall in no case be made the subject of litigation by either party.

"In Witness Whereof the parties hereto have hereunto interchangeably set their hands and seals the day and year first above written."

This lease was duly executed by the parties thereto.

The pith of the case appears in the opinion.

*Charles H. Wood and Edward B. Mears,* for plaintiff.

*Hale & Hamlin,* for defendant.

SITTING: STROUT, SAVAGE, POWERS, PEABODY, WOODWARD, JJ.

SAVAGE, J. The plaintiff, a real estate agent, having been requested by the defendant to secure for her a tenant for one or more years for her estate at Bar Harbor, secured Abram S. Hewitt as tenant, under a written lease, dated September 6, 1902, "to hold for five seasons as follows, 1903, 1904, 1905, 1906 and 1907, June 1st to October 15th." The lease also contained the following provisions:— "It is agreed and understood by both the parties hereto that in the event of the property being sold, the tenant is to give up possession of the premises and this lease is to be determined and ended at the end of the season immediately following the contract of sale. . . .

"Before completing the sale however of said property to any other party, the lessor agrees to offer it to the lessee at the same price and upon the same terms procurable from the intending purchaser, and the said lessee shall elect within ten days from receiving such notice whether he will purchase the said property upon the terms offered by said intending purchaser, and in case of an election to purchase the said lessor agrees to make the proper conveyance in fee simple by usual warranty deed and the lessee agrees to make the payments in accordance with such terms of purchase.

"The obligation to sell and purchase thus provided for is to be regarded as an honorable agreement between the parties hereto, but shall in no case be made the subject of litigation by either party."

The plaintiff executed the lease for the defendant as her agent.

The rents accruing under the lease for the seasons of 1903 and 1904 were fully paid, and the plaintiff was paid each year an annual commission of $150. During the season of 1904, the demised premises were sold by the defendant to Sarah A. Hewett, the tenant's wife. The sale was made through another agent of the defendant, and one who at the date of the lease had no authority to offer the estate for sale.

The question presented for determination is whether the plaintiff is entitled to recover the commission charged by him for the years 1905, 1906 and 1907, after the sale of the property.

The case shows no express contract for commissions, either as to time or amount, but the plaintiff claims that he secured a tenant for the defendant for the term of five seasons, and that in consequence he is entitled, upon an implied contract, to commissions for the full term. He insists that he should not be affected or his rights limited by the fact that the defendant sold the premises during the term, and thereby determined the lease. That the defendant earned a commission is not in dispute. He accomplished the purpose of his employment. He did more than was necessary to entitle him to a commission. It would have been enough for him to secure one willing to become a tenant upon the defendant's terms, and bring him to the defendant for acceptance as such. But he actually secured a contract of tenancy. The only question is how much did he earn? The commission of a real estate broker is usually understood to be a certain percentage upon the consideration paid, or offered to be paid or received. In the case of a sale, the problem is easy. The consideration is a single amount. In the case of a lease with annual rentals for a specified term, it would be reasonable to expect that the amount of commissions would depend, in some respects, at least, upon the length of the term contracted for. It would not be natural to expect that the parties understood that so large a commission would be earned in securing a lease for one year as one for five years. And that the parties in this case understood that the commission was earned and was to become payable in

annual instalments is, we think, reasonably to be inferred from the annual payments made while the lease was in force. And we agree with the plaintiff that he was entitled to annual commissions for the full term of the lease. But what was the full length of that lease ? We think it was not for five seasons absolutely. It was for five seasons, unless the property was sold in the meantime. It was a lease for five seasons, but determinable by a sale within that term. It was made determinable by the very lease which the plaintiff procured. He therefor did not procure a lease for full five seasons, but a lease which might lawfully end sooner. He is entitled to his earnings for the kind of a lease he secured. He was employed to get a tenant for one or more years. The longer the term he secured, the greater the amount of rentals, and naturally the larger the amount of his commissions in the whole. He took the chances of sale. It matters not that the limitation in the lease was for the defendant's benefit, and may have been made, as it probably was, at the defendant's direction. If it was so limited at the instance of the defendant, it was, just the same the kind of a lease which the plaintiff undertook to procure and did procure. And the amount of the rentals which was the consideration of the lease, and which naturally would be the basis of commissions, would vary according to the length of time which should elapse before the lease was determined by sale.

Nor does it matter that while the lease gave the tenant an option to purchase, in case of some other intending purchaser, the sale was actually made, not to the tenant, but to the tenant's wife. That provision was for the benefit of the tenant, and did not concern the plaintiff. If the property was to be sold, it could make no difference to the plaintiff whether it was sold to the tenant or to his wife, or to some one else.

The result is that the plaintiff is not entitled to recover commissions for the years 1905, 1906 and 1907.

*Judgment for the defendant.*